December 15, 2022

## REPORT REBUTTALS:

**YA ENGINEERING SERVICES, LLC**
**Matt Buckner, PE**
**Sr. Managing Engineer**

The report begins with an introduction to the field adjuster stating that, *"the purpose of this investigation was to determine the extent of these damages and provide a preliminary scope of repair. General repair recommendations are provided in this report; however, the preparation of detailed plans and specifications are beyond the scope of the project and report. All repairs shall be completed in a workmanlike manner and in accordance with manufacturer's specifications and the applicable building code(s), including modifications by governing jurisdictions."* This introduction immediately gives pause as costly elements of construction have been omitted from the recommended scope and estimate based on a inadequate and incomplete compilation of the actual extent of storm related damages to this structure – and nothing more than the same as far as the estimate is concerned. No insured -- especially one who has bore the brunt of excessive expenditures to protect property that should have been repaired months ago -- should be left with a preliminary scope of repair from a structural engineering firm hired to determine the extent of the damages. The estimate based upon this report is woefully inadequate due to the same. There is no legitimate or available method of construction that can be undertaken to properly indemnify the insured based upon the findings of this report, as you shall clearly see after being apprised of the facts of this loss; in part, and as follows:

## Background

This section of the report mistakenly outlines only two buildings with EPDM roof systems and omits the third building with the mod bit roof as shown in photo on left below. Photo on right is correct and this is why the report only discusses the EPDM roof systems.



*The Aerial Image 1. Eagle View™ image of the property*
*Outlining two buildings. (EPDM only)*



*Correct image of the three buildings that are subject*
*of the claim.(Mod Bit, EPDM) And two lower rear roofs.*

## Site Visit Observations

**Interior of Building**

*1. Significant long-term water damage to the interior ceiling and wall finishes was observed throughout the second level of the building. This includes severe staining, deterioration of wood lathes, biological growth, and delaminated wallpaper and plastering (Figures 3 through 6).*

**1)** This opinion is refuted by the fact there is no long term water damage to the interior ceiling and wall finishes as the roof has not leaked in many years. (see affidavit) The *severe* staining described in the report is from the old stain conditions that were present at purchase, sustained tremendous amounts of water intrusion caused by the wind damages to the roof. The water entered through the opening created by the high winds and wind driven debris causing water to pour through the roof deck onto the framing, upper and lower walls, ceilings, and floors. Water entered into the multi wythe structural brick walls when the masonry cap was blown off and

 

*Figure 3*. The report incorrectly determines that all of the damage and staining (above left) is due to long-term exposure to water infiltration from the roof. However, this assertion is wrong and cannot be substantiated as there is no methodology available to accurately date water stains and the factual background of the roof conditions and evidence of the upper floor conditions were unknown to the author on the date of photos and the publishing of this report. The stain on right was taken on December 2021 and the one on the left was taken May 4, 2022. but we know for sure that it was the new water that damaged the first floor because it had to have originated from the damaged roof at the time of the loss. (see affidavit)

We know that the areas mentioned in the report pertaining to the staining of the upper level and roof deck were not as severe nor were they as numerous as they are now, the area "framed" was certainly not stained prior to the tornado, and there was no water damage to the first floor prior to the storm. The water had to travel through a lot of materials in order to reach the first floor.

*2. Significant long-term water damage to the wood roof framing was observed throughout the second level of the building. This includes severe staining and deterioration of wood materials (Figures 7 and 8).*

2. The new water intrusion is evidenced by the water damage that occurred to the roof, deck, framing, ceilings walls, and into the first floor tenant offices. The existing "conditions" described in report were not the cause of the loss but the report is careful not to mention the areas of obvious water intrusion from the damaged roof. The conditions of any deteriorated wood materials, etc must be abated to properly replace the roof and its substrate and decking repair the roof and the other storm damaged components.

 

**Fig 1** *newe water damages to the newer decking and the freshly painted first floor walls and ceilings is not noted in the report.*    **Fig. 2** *Stains still wet from the tornado on the upper ceilings.*

*3. Several roof framing members had been replaced at the rear of the building (Figure - Significant water damage was observed at the interior plaster finishes beneath this location (Figures 10 and 11). Staining and built-up debris from ponded water was observed at the roof above this location (Figure 12)*

3) The replaced framing (area) was installed for extra support shortly after building was purchased and was not the result of a damage event to the structure. The debris under the area was there before the work was performed and the "ponding water and debris" observed was caused by the tornado when it lifted the rear gutter and roof section causing water to pour into the building. Some plaster damage was pre-existing and some of it happened during the tornado event. Number 3 is refuted by the photos below:





*Compare Report (Fig. 9) Not long-term*        *Compare Report (Fig. 9)Not long-term*





*Compare Report (Fig. 12)Wind caused water to pour in.*        *Compare Report (Fig. 10,11) New damage to plaster. Not long-term.*
*This is the rear wall that is misidentified as "ponding".*        *Wood lathing is not severely stained.*

## Exterior of Building

*1. The top course of clay bricks, located along the front parapet wall at the right side of the building, sustained wind damage. This includes clay bricks that were displaced, fallen, and separated from the parapet walls (Figures 13 through 14)*

1. This observation is blatantly wrong because there are actually several courses of brick on the front and right elevations damaged from the tornado, and many were dislodged or have fallen and struck the metal roof and the ground due to the lightweight concrete and masonry cap being severely damaged by the tornado. The right elevation wall was damaged down to the mid-section due to the wind force. The only thing holding the first three courses together is the EPDM material and termination bar.



*Fig. 1 Severe wind damage to the brick on top left of the front and right elevations has made the building dangerous and a substantial amount of money has been expended in trying to protect the property and prevent injuries. This photo alone refutes the opinions on scope and the amount of loss.*

*2. Various differing styles of clay bricks were observed throughout the exterior of the building. These clay bricks and mortaring materials varied significantly in shape, size, and appearance.(Figures 15 through 17).*

2. The report erroneously identifies the exterior facing brick as having "differing styles of brick", and they varied significantly in shape, size, and appearance. I counter that this building was not built from the ground up in a haphazardly manner or with varying types of brick. In fact, there are bricks of different types in the different wythes for the adequate support of the structure and according to the standards of the era.

A closer inspection of the brick reveals the front elevation is four wythe facing brick and all exterior brick are identical in size, shape, and pattern. The cap bricks have been set diagonal for decorative purposes. They are set with lime mortar and lightweight masonry coating is poured as the top cap and have  See figures below:



*Above Common bond brick patterns with five courses of stretcher bond brick followed by a row of header course brick patterns.*

*The painted facing brick  on left and unpainted on Right have the same size shape and pattern as interior brick on right  that previously had masonry coating on top of it. Interior brick in the attic area are the same size, shape, and appearance – minus the wear of the exterior brick. Interior brick wall on upper floor is the same size, shape, and appearance. The two middle photos are samples*

*3.   The clay bricks at the front exterior wall of the building, including the clay bricks that sustained wind damage, were covered with various deteriorated paints (Figures 18 and 19). The clay bricks at the rear exterior wall were covered with various plasters, and several isolated areas had been repaired with spray foams and plaster coatings (Figures 20 and 21).*

3. This Front exterior painted brick was covered with multiple coats of paint and the degraded mortar and masonry coating was broken into pieces. The rear masonry wall is coated with a thick layer of lightweight concrete masonry coating that was installed during construction of the building.



*These brick are all the same type just painted and displayed for aesthetics of the era and there was a different type of mortar for the inner wythes and the outer wythe for structural purposes. The brick below these are severely de-bonded and will require full replacement due to the same.*




*a. The unpainted brick ion the right elevation along the parapet wall is severely bowed from tornadic winds. The de-bonded condition of the facing brick requires it to be removed and replaced. Recent*

*b. Confirmed new damage to interior wall opposite side of a. showing coated masonry backside of right elevation wall.*

*debris strikes are evident all across the wall and bricks from the cap have struck the building roof next door as well. Attempts have been made to seal and stabilize it to no avail.*




*Exposed cap section in the two photos above shows the same brick was used to create the decorative, yet structural support, of the top course with a masonry coating cap, and further refutes the theories of the report.*




Clearly, the structural bricks have a consistent style, appearance, pattern, and function installed according to the methods of construction known in that era. Moreover, a proper repair of the structural walls cannot be accomplished due to the direct wind damages sustained, coupled with the condition of de-bonding throughout the exterior walls. Wind shear warped the right elevation wall. Also note the wind damaged windows on the front and rear elevations are not accounted for in estimates.



*Front elevation canopies are severely damaged by falling brick and debris from roof. The consultant stated there was no damage present on these canopies in his estimate.*

*4. Several areas of the EPDM roof cover sustained wind damage. This includes lifted and peeled-back sections of the membrane, separations between the membrane and batten strips, and impact damages from displaced clay bricks and terracotta copings (Figures 22 through 2S).*

4. This explains exactly how the tornadic winds caused the catastrophic water intrusion that poured through the roof openings created by the tornadic winds and was the cause of severe damages underneath it. This report has failed address this situation directly or attribute a single thing to the storm until this section.




Common Stairwell wall and window result of tornadic wind    Photo of recent water damage from roof into upper floor.



*Evidence of water intrusion into upper ceiling, wall, subfloor, and into first floor that was caused by tornado.*



Window frames wind damaged with recent water damage

## Discussion

The allegations that were relied upon in this report section are incorrect assumptions based only in conjecture as such was never discussed with the insured prior to, or after, the May 4, 2022 inspection. There has absolutely been no re-occurring or long-term exposure to water infiltration from the roof since the roof installation many years ago. The newer roof framing was actually installed shortly after the purchase of the building and initial inception of the policy and was not replaced due to a loss event. The ponding above the area is directly a result of tornadic winds that lifted the rear gutters that lifted the roof up as shown in photos above. The assertion that "water has been infiltrating through the EPDM over a long period of time" is preposterous when compared with the facts stated by insured.

The second paragraph of this section is refuted in its entirety by the fact that the masons who built this building in the 1900's had to use a soft, flexible and breathable lime-based mortar to act as a separator bed between individual bricks, which allowed the wall and its individual components to move as the mortar expanded and contracted, and to allow moisture to escape from the wall, which keeps the interior of the wall relatively dry.

After constructing the building foundation, the masons built the exterior brick walls several courses (rows) thick. The most uniform and sound bricks were used on the exterior of the building. Bricks that contained flaws or irregularities were used on the interior walls and covered with plaster or a masonry coating. These clay bricks were also used on cornices, pediments, lintels, sills and as decorative features for the buildings.

The masons of that era typically laid brick in different patterns of "headers" and "stretchers." A header is the short end of a brick, and a stretcher is the long end of a brick. Two typical patterns seen on these buildings is five-course and six-course common bond, also called <u>American bond</u>. To make these patterns, the masons laid five or six courses of stretcher bond brick followed by a row of header course brick, and so on, as shown in the photos and during inspections.

A licensed General Contractor and brick subcontractor have agreed that these brick are patterned and cannot be duplicated to preserve the historic character of the buildings. However, that fact that the brick walls are so severely de-bonded that this condition will not allow a proper repair to be achieved

**Report Photos:**                                              **Insured Photos:**



*Fig. 12 The arrows point to staining and built-up debris at the roof above the replaced framing members.*



*Fig. 12 The winds lifted the gutter and roof covering allowing water to enter the rear elevation into upper floors.*



*Fig 13. Red arrows point to wind damage to top course of clay Bricks.*



*Fig. 13 Windows and canopies are severely damaged by wind debris. Window lentils and brick is damaged and debris falling from bldg.*




*Fig.14. Note wind damage to top course of clay bricks at parapet wall around front-right corner of building.*   *This fig. shows there is sevrerl courses of brick and cap damaged That will result in the walls having to be repaired or repalaced.*




**Fig. 16.** *Note differing styles of clay bricks at exterior of building This is the American Bond pattern for structural exterior brick*   **Fig. 16.** *This is the same brick it has just been tuck and pointed stabilize the parapet wall for roof installaion. No mortar set.*



*Fig. 17*. *Note differing styles of clay bricks at exterior of building*.

 

*Fig. 24 Notes wind damage to EPDM  and brick cap*          *Fig.  25 Notes wind damage to EPDM*





*Fig. 21* *Report states this photo is clay bricks at rear exterior wall have been repaired with spray foam.*

*Fig. 21 is not bricks, but a masonry window sealed with spray foam. No bricks are shown in the photo as this is how it was built.*





*Fig. 20 Note clay bricks at rear exterior wall have been repaired with various plaster coatings.*

*Fig. 17 Building originally constructed with this masonry coating.*





*Figure 22 Overview of EPDM roof cover from front of roof*        *Figure 23 Overview of EPDM roof cover from rear of roof.*

## Conclusion

The report and estimate are incorrect in many aspects and are addressed by their respective report number and supporting photo documentation in **"Exhibit A"** attached hereto.

The alleged findings contained in this report have been refuted by the photographic evidence and sworn affidavit included herein and attached hereto. The inaccurate observations and conclusions of this report have been used to deny this legitimate claim, and it should be amended, corrected, and rescinded immediately. Roofing materials are not structural and are not even an engineering specialty. void of science (i.e. terminal velocity calculations, measurement of material impact resistance and relevant ambient factors, etc.) dovetails into a conclusion that supports the illusory coverage exclusions the adjuster has provided to the insured resulting in a wrongful denial of the insureds claim.

Therefore, based upon the information provided to you herein, it is clear that the firm has submitted information that lacks in any merit or fact that supports your partial denial of of our estimations. We formally request that the roof and upper floor conditions described in the report be correctly identified as conditions and the true extent of the damages be rendered along with correct repair methods to include the conditions that will be abated in order to repair the damaged components. And also provide detailed plans and specifications using the applicable building codes by the governing jurisdiction to safely complete the work described.

Due to the covered loss to the roof, the insurer is now required to bring the exterior masonry, structural brick walls, interior masonry walls, and interior decking and framing into compliance with applicable building codes before the roofs of those buildings are replaced. Moreover, the upper walls of the building are unreinforced with severe mortar

degradation and the upper section of the walls the walls must be made  code  compliant before replacement of the roofs in those areas. The upper course of brick was approved and repairing the walls is considered a major repair under the applicable building codes; Section 606.1 and 606.2.3 of the  International  Existing  Building  Code are triggered by the replacement of the roofs; and the  walls  are  presently  i n  a dangerous   condition that constitutes a high risk situation that must be addressed immediately.

Section 606.1 of the 2012 International Building Code ("IBC") states: Structural repairs shall follow this section and Section 601.2. Regardless of the extent of structural or nonstructural  damage, dangerous conditions shall be eliminated. Regardless of the  scope of repair, new structural members and connections used for repair or rehabilitation shall comply with the detailing provisions of the [IBC] for new buildings of similar structure, purpose, and location. Any building, structure or portion thereof that meets any of the conditions described below shall be deemed dangerous:
.
2. There exists a significant risk of collapse, **detachment or dislodgment of any portion, member, appurtenance or ornamentation of the building or structure under service loads.**

Bricks and debris have dislodged from subsequent storms damaging the structure adjacent and below the roof system of the property, as well as falling onto the metal canopies and landing on the sidewalks below.

In light of these facts and circumstances, we respectfully request that this report be reviewed and that all conclusory and unsupported opinions be removed and/or revised to address the true extent of needed repairs so the insurer can render proper payment for the same.

Sincerely,

William Griffin